UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE *EX PARTE* APPLICATION OF THOMAS CARVER PURSUANT TO 28 U.S.C. § 1782

Case No.  26-mc-80116-WHO

**ORDER GRANTING *EX PARTE* APPLICATION FOR DISCOVERY PURSUANT TO 28 U.S.C. § 1782**

Re: Dkt. No. 1

Thomas Carver filed an *ex parte* application for discovery pursuant to 28 U.S.C § 1782, seeking to authorize discovery from Meta Platforms, Inc. ("Meta") for use in a foreign proceeding. Application ("App.") [Dkt. No. 1].  For the following reasons, the *ex parte* application is GRANTED.

**BACKGROUND**

Carver is the founder and managing partner of the private equity firm, Harren Equity Partners ("Harren").  Declaration of Thomas Carver ("Thomas Decl.") [Dkt. No. 1-6] ¶ 4.  He has "worked hard for years to earn a reputation as a successful, ethical, and upstanding businessman and a man of integrity" and this reputation "is critically important to [his] ability to attract and retain clients at Harren and to make [his] livelihood."  *Id.* ¶ 5.

Carver recently discovered a comment published on Facebook under an article about him by The Daily Progress.  *Id.* ¶ 7.  The Daily Progress article was entitled "Charlottesville private equity boss pleads guilty to domestic battery" and was accompanied by the description "Thomas Allen Carver stood accused of attacking his girlfriend after a night out, first in his car and later at his Ivy-area residence."  *Id.*, Ex. 1.  The comment at issue stated that "[h]e has also done horrible things to me and I am going to report him.  I am in Costa Rica.  I have a friend who witnessed

everything and he even abused her and now he has sent her death threats on repeated occasions. He is in a bad way. I will report him anyway. I fear for my life, for that of my daughter and for that of my friend. That man is so evil." *Id.* ¶ 8-9; *see also id.*, Ex. 1. The Facebook comment was left by Saris Fergie under Account ID 61575758888477. *Id.* ¶ 7. Carver asserts that this comment includes "makes multiple false, disparaging, and highly damaging accusations." *Id.* ¶ 9.

To identify the individual who posted the comment, Carver hired investigative firm, Nardello & Co. Declaration of David Raskin ("Raskin Decl.") [Dkt. No. 1-8] ¶¶ 3-4. Nardello ultimately determined that the username "Saris Fergie" is most likely an alias but could not uncover the account holder's true identity. *Id.* Nardello also concluded that the account holder is most likely located in Costa Rica. *Id.* ¶¶ 5-6. Carver retained Costa Rican counsel in order to prepare for filing a civil defamation lawsuit in Costa Rica. Declaration of Roberto Echeverria ("Echeverria Decl.") [Dkt. No. 1-9] ¶ 4. Carver additionally hired U.S. counsel who sought information from Meta regarding the identity of the Facebook user but was told that Meta would not release that information absent "valid legal process." Declaration of Joseph R. Oliveri ("Oliveri Decl.") [Dkt. No. 1-7] ¶ 4. Carver has filed this application to effectuate that process.

## LEGAL STANDARD

Under 28 U.S.C. § 1782, federal district courts may order the production of documents or testimony "for use in a proceeding in a foreign or international tribunal" so long as the disclosure does not "violat[e] . . . any legally applicable privilege." *See also Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 249 (2004). Section 1782 "permit[s] district courts to authorize discovery where three general requirements are satisfied: (1) the person from whom the discovery is sought 'resides or is found' in the district of the district court where the application is made; (2) the discovery is 'for use in a proceeding in a foreign or international tribunal'; and (3) the application is made by a foreign or international tribunal or 'any interested person.'" *Khrapunov v. Prosyankin*, 931 F.3d 922, 925 (9th Cir. 2019) (citations omitted).

Even if those mandatory statutory requirements are met, "a district court is not required to grant a § 1782(a) discovery application simply because it has the authority to do so." *Intel*, 542 U.S. at 264 (citation omitted). Rather, courts have discretion to determine whether discovery

should be permitted, guided by four factors: (1) whether "the person from whom discovery is sought is a participant in a foreign proceeding"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether a discovery request is "unduly intrusive or burdensome" in which case it "may be rejected or trimmed." *Id.* at 264-65.

"Applications made under 28 U.S.C. § 1782 are typically considered on an *ex parte* basis since 'parties will be given adequate notice of any discovery taken pursuant to the request and will then have the opportunity to move to quash the discovery or to participate in it.'" *In re Hopkins*, No. 20-mc-80012-SVK, 2020 WL 733182, at *2 (N.D. Cal. Feb. 13, 2020) (quoting *IPCom GmbH & Co. KG v. Apple, Inc.*, 61 F. Supp. 3d 919, 922 (N.D. Cal. 2014)). "Consequently, orders granting § 1782 applications typically only provide that discovery is 'authorized,' and thus the opposing party may still raise objections and exercise its due process rights by challenging the discovery after it is issued via a motion to quash, which mitigates concerns regarding any unfairness of granting the application *ex parte*." *Id.* (quoting *In re Ex Parte Application Varian Med. Sys. Int'l AG, Applicant*, No. 16-mc-80048-MEJ, 2016 WL 1161568, at *2 (N.D. Cal. Mar. 24, 2016)).

## DISCUSSION

### A.   Mandatory Requirements

The requirements that must be met for a district court to authorize discovery are "(1) the person from whom the discovery is sought 'resides or is found' in the district of the district court where the application is made; (2) the discovery is 'for use in a proceeding in a foreign or international tribunal'; and (3) the application is made by a foreign or international tribunal or 'any interested person.'" *Khrapunov*, 931 F.3d at 925 (citations omitted). Each is satisfied here.

First, Meta is headquartered and has its principal place of business in Menlo Park, California. Oliveri Decl. ¶¶ 9-10. "In this district, business entities are 'found' where the business is incorporated, is headquartered, or where it has its principal place of business." *In re Med. Inc.*

United States District Court
Northern District of California

*Ass'n Takeuchi Dental Clinic*, No. 5:22-mc-80200-EJD, 2022 WL 10177653, at *2 (N.D. Cal. Oct. 17, 2022) (citations omitted).  This first requirement is satisfied.

Second, Carver asserts that the discovery is intended for use in contemplated proceedings before the trial court in Costa Rica.  Carver Decl. ¶¶ 16-17.  "Section 1782(a) does not limit the provision of judicial assistance to 'pending' adjudicative proceedings." *Intel*, 542 U.S. at 258. "So long as a future proceeding is 'within reasonable contemplation,' it satisfies the statute's requirement." *Khrapunov*, 931 F.3d at 925; *but see Uchida v. YouTube, LLC*, No. 22-mc-80155-JSC, 2022 WL 4923241, at *2 (N.D. Cal. Oct. 3, 2022) (proceeding not within reasonable contemplation where no showing by applicant that cause of action existed under foreign law). Here, while the case has not been filed pending the ability to get the requested discovery, Carver has hired Costa Rican counsel in preparation for his suit.  His counsel, Roberto Echeverria, has further entered a declaration asserting that there is potential civil liability for defamation for the Facebook account holder under Costa Rican law.  Echeverria Decl. ¶¶ 6, 12-14.  A future case appears to be within reasonable contemplation.

Third, once the suit in Costa Rica is filed, Carver will be a litigant in the proceedings. "[L]itigants . . . may be the most common example of[] the 'interested person[s]' who may invoke § 1782 . . . ." *Intel*, 542 U.S. at 256 (citation omitted).  Accordingly, the mandatory elements for discovery are therefore satisfied.

### B.    Discretionary Requirements

Other factors that I may consider when exercising my discretion to authorize discovery are (1) whether "the person from whom discovery is sought is a participant in a foreign proceeding"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether a discovery request is "unduly intrusive or burdensome" in which case it "may be rejected or trimmed." *Intel*, 542 U.S. at 264-65.

Under the first discretionary factor, Carver affirms that he has no intention of including

Meta as a party to the Costa Rican suit. Carver Decl. ¶ 16. Any evidence held by Meta may be out of reach of the Costa Rican court absent the granting of this motion. *See Intel*, 542 U.S. at 264 ("[N]onparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid."). This factor weighs in favor of granting discovery.

Additionally, Carver has demonstrated through his application that it is likely that Costa Rica would accept any evidence obtained in this process. Where the applicant "offers at least some evidence and caselaw to support its view that [the foreign] courts are generally receptive to evidence obtained in the United States under § 1782," the second discretionary factor weighs in favor of the application." *In re Application of Credit Suisse Virtuoso SICAV-SIF in Respect of the Sub-Fund Credit Suisse (Lux) Supply Chain Fin. Fund*, No. 21-mc-80308-JCS, 2022 WL 1786050, at *11 (N.D. Cal. June 1, 2022). Carver's counsel, Echeverria, states in his declaration that "Article 43.1 of the Costa Rica Code of Civil Procedure expressly provides for the admissibility of evidence from outside of Costa Rica." Echeverria Decl. ¶ 8. He also notes that "Costa Rica is a signatory of, and party to, the Inter-American Convention on Letters Rogatory, as is the United States," which "further demonstrate[es] that Costa Rican Courts cooperate with foreign courts." *Id.* ¶ 10. This factor is satisfied.

In support of the third discretionary factor, Echeverria asserts that he does not believe that Carver's application is circumventing any restrictions or policies under Costa Rican law. *Id.* ¶ 11. Courts have found that this factor weighs in favor of discovery where there is 'nothing to suggest that [the applicant] is attempting to circumvent foreign proof-gathering restrictions.'" *In re Hopkins*, 2020 WL 733182, at *4 (quoting *In re Google Inc.*, No. 14-mc-80333-DMR, 2014 WL 7146994, at *3 (N.D. Cal. Dec. 15, 2014)).

This factor, however, does not only address circumvention of Costa Rican law but also U.S. law. *See United States v. Meta Platforms, Inc.*, No. 23-mc-80249-PHK, 2023 WL 8438579, at *5 (N.D. Cal. Dec. 5, 2023). The Ninth Circuit has recognized that a case seeking to unmask an author or publisher of content may implicate the First Amendment. *In re Gliner*, 133 F.4th 927, 933 (9th Cir. 2025) (quoting *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 342 (1995))

("[T]he First Amendment protects a publisher's and an author's 'decision to remain anonymous.'"). While "foreign citizens outside U.S. territory do not possess rights under the U.S. Constitution," the First Amendment may still be directly or indirectly implicated if unmasking the author would impact a U.S. audience's ability to access the information. *Id.* at 934. However, "the mere technical accessibility of the Website in the United States is not sufficient to substantiate a First Amendment claim on behalf of the U.S. public." *Id.*

Here, Carver seeks information about a Facebook account holder making an alleged defamatory comment on a news article. The Facebook user states that he or she is based in Costa Rica; it is not clear whether this individual is a U.S. citizen and protected by the Constitution. Carver Decl., Ex. 1. The comment, however, was written underneath an article published by The Daily Progress, an article which appears to discuss conduct taking place in the United States. *Id.* This suggests that the comment may have been intended for U.S. audiences and that unmasking this account holder could implicate the First Amendment rights of the U.S. public.

Carver contends that courts in this district have regularly found that the First Amendment should not be factored into consideration "where the record does not indicate that anonymous speakers are entitled to First Amendment protections." Memorandum ISO of § 1782 Application ("Mem.") [Dkt. No. 1-5] at 17 (quoting *Meta Platforms, Inc.*, 2023 WL 8438579, at *6). However, the cases cited by Carver were all decided before the Ninth Circuit's decision in *In re Gliner*. In addition, these cases do not address situations in which the content does appear to be directed at a U.S. audience. *See, e.g.*, *Meta Platforms, Inc.*, 2023 WL 8438579, at *2 (no First Amendment concern where discovery was sought to support Korean plaintiff suing in Korea against an unknown defendant who had insulted the plaintiff through his or her Instagram account); *hey, Inc. v. Twitter, Inc.*, No. 22-mc-80034-DMR, 2023 WL 3874022, at *3 (N.D. Cal. June 6, 2023) (First Amendment not a consideration where "tweets [were] in Japanese and [were] directed at Japanese individuals and a Japanese company"); *Zuru, Inc. v. Glassdoor, Inc.*, 614 F. Supp. 3d 697, 702 (N.D. Cal. 2022) (no First Amendment issue concerning discovery request for identities of former employees of New Zealand company who left six allegedly defamatory reviews on Glassdoor in order to allow suit in New Zealand). The facts do not foreclose

United States District Court
Northern District of California

6

application of the First Amendment.

Where a First Amendment concern is present, the court analyzing the discovery should: "(1) notify the speaker and provide them with an opportunity to (anonymously) defend their anonymity; (2) require the party seeking disclosure to make a prima facie showing on the merits of their claim; and (3) balance the equities, weighing the potential harm to the party seeking disclosure against the speaker's interest in anonymity, in light of the strength of the underlying claim." *In re DMCA § 512(h) Subpoena to Twitter, Inc.*, 608 F. Supp. 3d 868, 876 (N.D. Cal. 2022).

At this stage, Carver has made a sufficient showing that he has a claim for defamation under Costa Rican law. According to Echeverria, "a statement is defamatory [in Costa Rica] if it falsely attributes the commission of a criminal act to a person or adversely affects their reputation by means of falsehood." Echeverria Decl. ¶ 12. True statements and statements of opinion are not defamatory. *Id.* The alleged defamatory comment at issue here accuses Carver of abuse and death threats and calls him evil. Carver Decl., Ex. 1. Carver asserts that none of these accusations is true. *Id.* ¶ 10. On its face, Carver's claim is plausible.

In addition, without the requested discovery identifying the target of the suit, this claim is unlikely to be able to proceed. *See Zuru*, 614 F. Supp. 3d at 708 (N.D. Cal. 2022) ("[I]f Glassdoor doesn't identify the reviewers, Zuru can't sue them and will be left without a means by which to 'vindicate [its] good name.'") (citation omitted) (alteration in original). The discovery sought is critical to this matter.

On this record, I conclude that authorizing this discovery request is appropriate under the third discretionary factor despite the potential First Amendment concerns. This decision is without prejudice to Meta or any other interested party from filing a motion to quash on any appropriate ground. As there is no indication that that the anonymous account holder has been notified, I will require Meta to serve copies of the relevant subpoenas on the account holder in the manner most likely to notify her, so that she (or he) may object to the discovery.

The fourth and final consideration under the discretionary *Intel* factors is whether the request is unduly burdensome or intrusive. Carver seeks leave to serve two subpoenas: one for

United States District Court
Northern District of California

the production of documents and one for a deposition.  Mem. at 1-2.  The document subpoena contains a single request for:

> Documents and Communications sufficient to identify the person(s) who made, published, and/or caused to be made or published the Facebook Comment, and/or who own, registered, and/or have accessed the Facebook Account, including Documents and Communications reflecting the name(s), address(es), email address(es), phone numbers, and/or any forms or means of payment relating to the Facebook Comment and/or Facebook Account, and all IP address(es) from which the Facebook Account has been accessed and/or the Facebook Comment was made, published, or edited.

Exhibit A – Subpoena to Produce Documents [Dkt. No. 1-1], Attachment A.  The deposition subpoena similarly lists one topic:

> Authentication and explanation of the documents produced in response to the Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action served on Meta Platforms, Inc. contemporaneously herewith on behalf of Thomas Carver.

Exhibit B – Deposition Subpoena [Dkt. No. 1-2], Attachment A.  These two subpoenas appear narrowly tailored to accomplish Carver's primary goal: to identify the individuals behind the alleged defamatory comment.  This last factor weighs in favor of granting discovery.

### CONCLUSION

Carver's *ex parte* application for discovery is GRANTED.  Carver shall serve on Meta a copy of this order, the *ex parte* application and its attachments, and the authorized subpoenas, Exhibits A and B to the application.  Meta shall provide a copy of the subpoena to the relevant account owner and counsel, and advise the account owner that Meta will provide the information responsive to the subpoena. unless he or she files a motion to quash within 30 days from the date he or she receives the subpoena.  **IT IS SO ORDERED.**

Dated: June 11, 2026

William H. Orrick
United States District Judge